Good morning, Your Honors. May it please the Court, my name is Michael Grimaldi, along with Eric Kazerian, and we represent Lamps Plus. I'll reserve five minutes for rebuttal. The District Court erred in forcing class arbitration, class action arbitration, because there's no language in the party's contract showing any agreement to class action arbitration. There's no explicit or implicit agreement to class action arbitration. The Court misapplied the test and stole Nielsen. Let me ask you, if the contract were ambiguous and the California rule is you construe an ambiguity against the drafter, or if in a contract of adhesion you construe the ambiguity, would the argument still be the same? Your Honor, there is no ambiguity in the agreement. Well, that's not what I asked you. I said if there was. Let's call it a hypothetical question. If there were an ambiguity and the rule in California were that you construe an ambiguity against the drafter, or that you applied the rule of the contract, which the other party has no choice but to accept it, would the argument still be the same? No, Your Honor, and that comes down to applying the Stolt-Nielsen case. Stolt-Nielsen held that courts or arbitrators cannot compel class arbitration unless there's a contractual basis in the party's arbitration agreement for finding that the parties actually agreed to arbitration. So you need some sort of language in the party's agreement showing an agreement, just like any other contract. You need something that says, hey, these parties agree to class arbitration. You need something substantive in there, just like any other contract. Well, they said it could be silent. You don't need any words, and they didn't add a footnote. We won't say what would constitute an agreement. And my question was, and it may not be relevant here, but the question was, if the contract is ambiguous and you enter into it knowing that under California law the ambiguity will be resolved against you as drafter of that contract, haven't you entered into a contract that you should know will be construed as agreeing to class arbitration? I understand, Your Honor. Let me try and get back. Let me try and answer that question. So as obviously the Federal Arbitration Act trumps contrary state law rules, and Stolt-Nielsen was very clear that a rule of fundamental importance for interpreting arbitration agreements is that arbitration is a matter of consent, not coercion. Consent, not coercion.  This is a federal rule of interpretation of arbitration agreements that trumps any contrary state law rule. And the Supreme Court kind of got into this last term with the DirecTV v. Ambrosia case, and in that case the California State Court applied the anti-drafter canon, the contra preferentum canon, and the California court found an ambiguity and interpreted the agreement against the drafter. But the Supreme Court said, no, you found an ambiguity when you wouldn't find an ambiguity in a regular contract. So finding an ambiguity... That's right. You have to treat an arbitration provision with respect to ambiguities the same way you would treat any other contract. You can't single it out for different treatments. That's what the court said in that case, right? Yes, Your Honor. And that case is perfectly applicable here. That's, in essence, what the district court did. The district court treated the arbitration agreement here differently than a regular contract. In what way? The district court basically added an agreement to arbitrate. Sorry. The district court basically added an agreement to class arbitration when there was no agreement. The district court... No, wait a minute. How does it treat it differently by saying there's an ambiguity and we construe it against the party that drafted the contract? That's the way they would treat any contract, right? Yeah, but there needs to be an ambiguity and the district court didn't identify... Okay, that's fine. I said assuming an ambiguity. Okay, assuming... an ambiguity, district court didn't treat this contract any differently than it would any other California contract. Well, in any other California contract, you would have some sort of evidence of an agreement to a term. You need... If there's an agreement to buy a red car, it would say in the contract that... First of all, you're being a little sloppy in your description of the silence that's in Stolt-Nielsen. The parties there did not use, and the court says this, the term silent to simply mean that the clause made no express reference to class arbitration. And that's the case in your contract, right? Yes, Your Honor. So rather, they stipulate that all the parties agree that when a contract is silent on an issue, there's been no agreement that has been reached on that issue. So the court started with a stipulation of the parties in Stolt-Nielsen that no agreement was reached on that issue. Yes, Your Honor. So that's different here, because we're looking at this contract that talks very broadly about all claims, all controversies, and doesn't exclude class or collective claims. Your Honor, Frank Varela has admitted in his brief now that the agreement is silent as to class arbitration. That's about 15 times throughout. In the sense that there's no express reference, and that's what I'm saying, we're getting a little sloppy with the terms. There is no ‑‑ I think we can all agree there is no express reference to class certification in this contract, right? Correct. Okay. We can all agree with that. We've all read the contract. That's undisputed. But the key point is that just because there's a lack of a class action waiver, that cannot be converted into a consent to agree to class arbitration. I don't think it's that alone. I don't even think that's what they're arguing. It's that this is so broad. It's almost like you guys are using this as a sword, and then you're turning around and trying to use it as a shield. Why don't you just draft an agreement if you don't ‑‑ if you didn't agree to arbitrate everything? Why don't you just draft an agreement that excludes class actions? Your Honor, Stoltenhielsen didn't require that. No, but Stoltenhielsen, as Judge Wardlaw said, the parties stipulated there that there was no agreement of any kind. And the court makes it very clear that they proceed from that basis. They say they don't look to any state law. They don't look to anything except policy. But that the parties agreed that they did not reach an agreement in the contract. Your Honor, let me just take a look back through the language. There's about 57 examples of singular language used in the parties' agreement saying I, me, my, employee. Only singular language is used to show that the two parties agreed to ‑‑ I think you can also find lots of language about any claim that the individual may have. Yes, Your Honor, and in our briefs, we explain this, and we look at all of the different cases. You know, we are in the clear majority rule on looking at contracts like this. The key language that I think Your Honor is referring to is specifically the company and I mutually consent to a resolution by arbitration of all claims that arise in connection with my employment, in connection with Valera's employment, not the ‑‑ not the employment of any other employee. Well, it did arise in connection. So the other thing, you know, I used to defend class actions. So I'm just thinking about this thing. Wouldn't it be easier for LAMS Plus? Just it was one breach, and it may be, you know, at least we know Varela had an issue of identity theft. We don't know how many other people are out there with identity theft. Basically, you're just measuring their damages. Who actually had an injury and what the value of that was. Wouldn't that be simpler for you just to have an arbitrator do that? Your Honor, I don't exactly understand your question, but ‑‑ My question is the mechanism of a collective action when the facts are so ‑‑ the liability is there, clearly, because your employee negligently succumbed to a phishing scheme and let out all this personal data. So you're really just dealing with, you know, who actually was injured by this of your employees and what value or how much damages do they have? Your Honor, let me take this in ‑‑ Let's go through the language that you wanted to talk about. Okay. You say, mutually consent to the resolution by arbitration of all claims or controversies that I may have against the company or against its officers, et cetera, that the company may have against me. Now, one claim you might have is a class action claim. Okay. Next, specifically in the company and I mutually consent to the resolution of all claims that may hereas to arrive in connection with my employment or any of the party's rights. Now, doesn't his claim for class action, which he would have in the court, isn't that a claim of his that arises out of his employment? No, Your Honor, because looking at all of the singular language in the agreement, it says his employment, not the employment ‑‑ The next point along with it, the only claims that are arbitrable are those that, in the absence of this agreement, would have been available to the parties by law. Now, wouldn't his class action claim have been available to him by law in the absence of this agreement? Your Honor, yes, but you have to look at the specifically language in the arbitration agreement which limits the scope of the arbitration agreement, and that's in the claims covered by the arbitration provision section. But if I may, Your Honor, I think, you know, looking at all of the cases we cited in our brief, many of them had very broad arbitration clauses, but they still found that there was no agreement to a class action arbitration. Most arbitration clauses use these very broad ‑‑ use very broad arbitration agreements to get all the types of claims into arbitration, but that doesn't mean you can take that and convert it into an agreement to class arbitration. Well, if it's a claim that the individual had and he's giving it up to arbitrate and it seems to be, from this arbitration clause, that what the point is he's going to give up all his claims at law or in court in exchange for an arbitration of those claims. Your Honor, respectfully, that's not a contractual ‑‑ there's not a contractual basis or evidence to show there was an agreement. The Supreme Court has been very clear that, you know, the shift from regular arbitration to class arbitration is a significant one. It completely changes the character and risks. It removes any effective means of appellate review. So you need to have some sort of, like, significant language or something showing besides a broad arbitration agreement. That's the clear holding in Stolt. Well, if you enter into it in another State, you might be right, but if you enter into it in the State of California and the Supreme Court said in that case of yours that they didn't look at anything, like, such as State law or the trade, the practice in the ‑‑ that was a maritime problem, what the practice was in the maritime industry or what the State law was. And if you enter in California into a broad, ambiguous agreement and the State law would construe that agreement against you, then you knowingly enter into a contract which will be construed as affording a class arbitration since that was one of the claims. And the Supreme Court didn't say anything that would discourage the conclusion that you follow the State law. It several times referred to that being what the arbitrator should do was to follow the State law and construe the contract the way the State would. And I must say I don't see any different treatment for this arbitration contract than any other similar contract of adhesion that the California Supreme Court would construe. It's the same form of construction as they do in every contract. It's not an anti‑arbitration type of construction. There's nothing singular about that. But, Your Honor, you can't take an ambiguity and then coerce class arbitration. But you're not coercing it. You're saying that's what you entered into. You entered into an ambiguous contract. And tell me what's wrong with this. You entered into an ambiguous contract. And I'm assuming for the moment ambiguity. You entered into an ambiguous contract into a State which is going to construe that contract against you and give it the most favorable construction to your opponent. So you know when you have good lawyers that you enter into that. I'm not going to enter into that contract in California because this is the type of contract they're going to construe against me. I'm going to either go to another State or I'll do what Judge Wardlaw said. I'll put right into the contract no class action. Your Honor, if I may, this anti‑drafter canon is only used as a very last resort when all other interpretive methods are exhausted. Here a reasonable interpretation of the contract is it's just like any other arbitration agreement and the parties agree to the streamlined, normal, typical, regular two‑party arbitration. That's a very plausible interpretation of this contract. And that's what the parties agree to here. I hope to have a minute or so. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Michelle Vroposky on behalf of Plaintiff Appellee Frank Varela. I would like to point out that I understand where the defense is coming from with the construction of the contract, but I think they ignore the Ninth Circuit precedent that controls this case that was issued in Morris v. Ernest Young, 834 F3D 975 in 2016. Well, you're talking about a different theory. There are two possible theories. Correct. And Morris's suit's been granted. Correct. All right. So I think if you want to rely on that theory, we have to decide whether we want to just delay resolving it until we see what the Supreme Court's going to do. And if you can add, you may have a pretty good idea of what the Supreme Court's going to do. I do not have a good idea. Well, I'll tell you that they put it over for re-argument, obviously because the vote was 4-4, and they needed to have a new argument, and they've now appointed Justice Gorsuch. Now, you don't have any idea how that case is going to come out? Well, now. Well, in any event, I think it would be unwise. That's just my view. Take it for what it's worth. Right. Well, okay. I will take it for what it's worth, and I'll take your advice, but I just wanted to make the point that as it is right now, it is controlling authority. Yes, we know that's a separate theory. That is a separate theory, and if it is not overturned, then there's no dispute that this would be illegal under the NLRA. But going back to the main holding that the district court found and ordered a class arbitration in this contract, I agree with everything that your interpretation is that the judge correctly. Well, we were just asking questions. I could ask you some questions, too. Of course. Such as a lot of the language in the case, the Supreme Court case, which is primarily relying on, I don't remember the name at the moment, but the one that stole Nielsen, there's a lot of language in that opinion that's not exactly favorable to your view. What would you say about that case? It's distinguishable because in that case, even though there was an arbitration agreement, it was between two sophisticated business parties that are familiar with arbitration and can anticipate litigation going down the road. So they agreed to arbitration, but on a separate agreement, they agreed that it's silent as to class treatment. So they agreed by stipulation that they would submit that issue to the panel of arbitrators to decide, and they suggested to the arbitrators that they look basically not at their agreement and not at the language, but try to ascertain whether, based on custom and practice in that particular industry, class actions are something that's typical and should be applied in their case. And, therefore, the arbitrators had no reason at all to construe the actual arbitration agreement's language, and they went and based their decision finding class arbitration permissible on a basic policy argument that had nothing to do with the party's intent and had nothing to do with the construction of the actual contract at issue. Unlike here, our contract, there's a disagreement from the parties. There was no stipulation saying we don't know and we want to give it to somebody else to decide. Varela was saying absolutely there should be a class action. The other side, LAMS Plus, was blocking it and trying to say the silence amounted to a waiver. The fact that they said nothing, they want to impose a restriction on the employees from bringing a class action, which amounts to the same as an express waiver. And LAMS Plus admits that much on page 61 of their brief. They said even though it's silent, legally it has the same effect as an express waiver. So they're imposing a waiver without saying they're doing that in their agreement, and they're the sophisticated party. Unlike Stolt-Nelson, my employee, my client, was a warehouse employee. He's not sophisticated. He doesn't know. He can't anticipate arbitration rules or if there's going to be litigation down the road. He was not aware that he was waiving any rights to arbitration. So under California law, like you identified, the judge has the ability and the responsibility to construe the contract, and here it is ambiguous. They counted up how many ayes, whees. That's irrelevant. They're entering into a bilateral contract on an arbitration agreement, but that doesn't mean that that blocks an employee from bringing a collective action in any forum. If they wanted that, they could have said it. They didn't. And the district court contrasted that against the very broad language encompassing any and all claims arising out of Varela's employment, and it encompasses all actions that they could have brought in the civil court have to go to arbitration. Here, there's no way to even construe that that would block out class actions because they would be able to bring that in the civil action. And like we said, the data breach arose out of his employment relationship, and it happened to 1,200 other employees. And Varela shouldn't have to suffer the effect of the ambiguity. It should be construed against the more sophisticated party. LAMS Plus drafted it. They gave it. It's an adhesive contract. It was a condition of his employment. He had absolutely no ability to negotiate around that, and he shouldn't be stuck with the ambiguous consequences. They shouldn't be construed against him. And the district court got it right, and her decision ordering and compelling class arbitration should be upheld. Thank you, counsel. Do you have any further questions? Thank you, Your Honors. Your Honors, I want to quickly address this. I didn't give you two minutes, but I did want to. I assume your view of the Morris case is that we should withhold judgment until after the Supreme Court acts? Yes, Your Honor, but we do have significant argument showing why the National Labor Relations Act has exclude or the board has exclusive jurisdiction and why, in this data breach case, it would not apply to a labor relations statute. But, yes, if the court was going to find against us for any reason on Morris, we think that the court should stay the case until Morris is decided. Because you can add. Because you can add. We just want a. . . No, it's all right. It's all right. Go on to the next argument. So there is significant talk about the any claim language, but we've got to go back to first principles here. A class action itself is not a claim. It's a procedural device. This Court in Sakavi Luxottica mentioned that a few years ago, that a class action is a procedural device for resolving the claims of absent parties. It is a waivable right under Rule 23. It is not an actual claim. It's just a procedural device for aggregation. So just because there's any claim language in the arbitration agreement doesn't mean class claims. That's just a way lawyers use the word. But a Rule 23 aggregation is not an actual claim. But don't arbitrators actually consider concerted or collective actions in arbitration? Yes, Your Honor. There can be. . . The Supreme Court has ruled that there can be a class action arbitration in the Green Tree Financial, but there. . . That goes to my earlier point. Sometimes it makes dealing with something more manageable. Your Honor, this goes back to the policy reasons articulated in Stolt-Nielsen and AT&T v. Concepcion. There's a huge difference between. . . I know exactly what you're referring to, but when you filed the motion to bring to arbitration all of Mr. Varela's claims, you were giving up all of those benefits of not being in a court. You were bringing into all of the things that changed the nature of the proceeding. You had to know that. You're not going to have an appeal, all of those other things. Right, Your Honor. We were making that motion because all the courts looking at this same language compelled arbitration on an individual basis. So we were giving up those rights to appellate review thinking that this would be an informal proceeding with two parties instead of a class action arbitration. The Supreme Court has been very clear that the benefits of arbitration are not assured. The benefits of arbitration are not assured with a class action arbitration. It ends up with procedural morass. It makes it more expensive. We don't have judicial review. We don't have the same sort of rights that we get in court. So we wouldn't have moved to compel arbitration if we thought it would be a class action arbitration. Well, you know, if you look at the specific case, there are class actions where a company can face nationwide a class of thousands and thousands of people. You're only talking about your employees. How many are there, 180 or something? I believe plaintiff alleged 1,300, but, yes, around over 1,000. Over 1,000. But it's a single issue, which the only difference is you would like each one of your 1,300 employees who was affected the same way to have a separate arbitration. You'd rather have 1,300 arbitrations than have one over the same question, where the only difference could be the amount of damages. No, Your Honor, I wouldn't put it like that. We just want to have this particular case arbitrated. I know you wouldn't want to put it like that, but isn't that the result? What you want is each employee you're saying, and they're all covered by this agreement, and each one should have a separate arbitration. Your Honor, I highly doubt 1,300 employees are going to file. I highly doubt that, too. That's the purpose of avoiding class arbitration, because employees can't afford this as individuals. Your Honor, those policy considerations really don't come into play here, because this is a strict contract interpretation issue. It is, but what I was saying to you is that the issue of facing a nationwide class arbitration where there may be differences in the amounts of damages that depend on other facts, here it's a very simple reason. You're telling us why you wouldn't have entered into a class arbitration, and I'm saying those arguments are not so persuasive in this type of a case, where it's only your employees, all of whom are affected identically, and why would you have avoided this? You say you wouldn't have entered into this terrible system of class arbitrations, and I'm saying maybe you would have. You're saying, and we have to understand your policy argument, I guess, to rule for you, because you're telling us you wouldn't have entered into this kind of a thing. Your Honor. What I don't understand, why not? We would not have filed a motion to compel arbitration if we thought we would have ended up as a class action arbitration, because no defendant wants to be in a class action arbitration, because you basically are betting the company without an effective means of review. We would rather be in court. But we looked at all the case law that said and pointed us in the direction that our agreement doesn't have an agreement to class action arbitration. Well, you could have waived arbitration in this case. We could have, Your Honor, but looking at all the evidence before us at the time, we saw no reasonable basis why we would be forced into a class action arbitration, and that's why we moved the way we did. But I think the key point of the key point. We gave you two minutes, but we took most of it. We're now up to five. How about if we give you one more minute? I think the key point, the utterly decisive point here, is just because there's a lack of a class action waiver, that does not make it so that the parties agree to a class action arbitration. Stolt-Nielsen and other cases across the country are clear that if you have singular language like this and you interpret the contract as a whole, it shows that there's only an agreement to two-party arbitration. You can't take a class action, a lack of a waiver, and convert it into consent. That's what all these cases say. Thank you, Your Honors. Thank you. The case is delegated and will be submitted.
judges: Reinhardt, Fernandez, Wardlaw